58 CCPA
**Application of Leon M. ADAMS, Emily M. Gause, Clarke E. Schuetze and George R. Somerville.**

**Patent Appeal No. 8378.**

United States Court of Customs and Patent Appeals.

Dec. 17, 1970.

Fred L. Witherspoon, Jr., Washington, D. C., Marvin B. Eickenroth, Houston, Tex., attorneys of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Lutrelle Parker, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN, and LANE, Judges, and RE, Judge, United States Customs Court, sitting by designation.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 1–6 in appellant's application serial No. 507,858, filed November 15, 1965, for a method of centrifugally encapsulating one liquid material within another on a mass-production basis. Claims 7–9 stand withdrawn from further consideration as being drawn to a nonelected invention. No claims were allowed. We affirm.

THE INVENTION

Appellants claim a process exemplified by their first claim:

1. A method of encapsulating a liquid filler material within a liquid film material, comprising the steps of extruding rods of the filler and film material from the outer ends of concentric orifices, and subjecting the rods to a centrifugal force which causes a composite rod of said materials to

break up into capsules at some point beyond said outer ends.

The apparatus appellants used to carry out their process is shown in the following drawing from their application, Fig. 1 being an elevation and Fig. 2 being a horizontal section on the line 2–2 of Fig. 1:

[A3335]

It comprises an outer hollow cylindrical head 10, an inner hollow cylindrical head 17 mounted concentrically within the outer head, a plurality of tubes 22 projecting from the inner head radially outward through orifices 20 in the outer head concentric to and larger than the outer diameter of the tubes, means such as pumps 28, 29 for force-feeding liquid filler material into the inner head and liquid capsule-forming material into the outer head, and means such as motor M and drive belt 13 for rotating the two heads about their mutual vertical axis independently of the force-feeding means. Tubes 22 are described as having orifice diameters of 0.04″ and orifices 20 in the outer head are 0.07″ in diameter. Tube wall thickness and hence the radial width of the annular orifice for the capsule-forming material is not stated. A combination of the force-feeding pressure and centrifugal force extrudes cylindrical, coherent streams of liquid filler material from the tubes and tubular, coherent streams of liquid

capsule-forming material from the orifices in the outer head. The two streams from each nozzle combine into composite steams which are broken up into droplets by centrifugal force at some point beyond the ends of the tubes. The surface tension of the capsule-forming material then causes the droplets to assume a spherical shape with the filler material inside, and the liquid shell of the capsule so formed is hardened by "any appropriate means," such as "free fall downwardly through a suitable atmosphere or by projection into a hardening bath of some type."

## THE REJECTION

The appealed claims were rejected as obvious under 35 U.S.C. § 103 in view of Watt's U. S. patent No. 3,111,708, issued Nov. 26, 1963, for "Capsule Manufacture." In addition to describing his own invention, Watt states that, prior to his invention, it was known in the art that:

Centrifugal action may be employed by mounting one or more concentric tube nozzles radially upon a shaft, which is rotated while the capsule-forming liquids discharge therefrom.

To meet the requirement of *extrusion* contained in appellants' claims, the board noted that Watt also discloses that in his own invention (which employs *extrusion* of both liquids through concentric annular orifices) "the rates of supply of his liquid materials must be sufficiently high to insure that the annular slits * * * remain 'flooded'" during operation. This the board took to imply "some degree of force feeding." Finally, the board noted the submission by appellants of an affidavit to establish the superiority of their invention to Watt's, but it summarily dismissed the affidavit with the statement that "we find in the adduced affidavit no evidence establishing unobviousness."

## OPINION

Appellants argue that, "When taken in its full context," the Watt specification in its discussion of prior art "does *not* suggest *the extrusion of rods* from the ends of concentric tubes, but instead suggests the breaking off of *discrete capsules* from the ends of the tubes *one at a time*." (Original emphasis.) While this is true, we are unable to agree with appellants that this minor difference between their invention and the total Watt disclosure makes their invention unobvious.

As appellants themselves have stressed, theirs is a process for encapsulating one liquid material within another "on a mass production basis." Even without the disclosure in Watt that care should be taken to insure that the discharge orifices in his capsule-making apparatus remain flooded during operation, what could be a more obvious expedient to increase the rate of output than to increase the rate of input? Force feeding the liquid inputs of a device such as that disclosed in Watt as part of the prior art, which is all appellants' device is, would obviously cause the liquid to *extrude* as composite streams some distance from the head before centrifugal force caused them to break into discrete droplets. Appellants have not suggested that their extrusion affects the product of the process in any way, or that they surmounted any significant technical obstacles in achieving the increased throughput such extrusion allegedly makes possible.

Appellants submitted during prosecution an affidavit by one Herman Wade Schlameus, a research chemist with the Southwest Research Institute of San Antonio, Texas, which allegedly sets forth the results of two exemplary runs at different rotational speeds of encapsulating equipment of the type described in appellants' application. The original purpose of this affidavit, we are told, "was to compare the capsule 'throughput' by the use of Appellants' claimed method with the capsule throughput Watt alleges to have achieved." However, the board relied, not altogether upon the disclosure of Watt's own invention, but upon the apparatus described in Watt's specification and said to have been in

the art prior to Watt. Appellants, accordingly, now rely on a two-step comparison: Noting that Watt asserts that "Another important advantage of the invention resides in the considerably greater throughput possible, as compared with nozzle apparatus" and still relying on the Schlameus affidavit to establish superiority of their invention to Watt's, they argue that "If Appellants' results are superior to Watt's, they are necessarily that much more superior to that [sic] of the art prior to Watt." In our view, this is not necessarily so and we do not find this argument persuasive.

Watt's assertion is wholly conclusional and entitled to little weight. Appellants' mere assertion is no substitute for evidence of record of the throughput of the apparatus referred to in Watt as being in the prior art. If appellants wished to demonstrate the alleged superiority of their claimed process to that carried out in the prior art "nozzle apparatus" disclosed in Watt, they should have submitted comparative evidence in the ordinary way under Rule 132.* On oral argument, counsel for appellants had to concede that the reason appellants wanted to be able to achieve comparable weight output with circular extrusion orifices, with total area much less than Watt's annular extrusion orifice, is that use of circular orifices gives greater control over the size and symmetry of the capsules than does use of Watt's annular orifices. This advantage, however, is due to the use of nozzle apparatus disclosed as prior art by Watt, modified only by the use of forced feed.

The decision of the board is affirmed.

Affirmed.

---

* We note that appellants complain that they "were accorded no opportunity to prepare and submit evidence comparing the results of their method with the art 'prior to Watt'" because the "art prior to Watt" was first used as a basis for rejection "by the Board in its Decision on Appeal." However, they have not asked that this cause be remanded to enable them to submit new evidence addressed to the board's ground of rejection, apparently in the belief that no such evidence is necessary because the assertions contained in Watt will do as well.